UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In re:

JONATHAN GONCH and                                              Case No.: 08-10403
JENNIFER GONCH,                                                 Chapter 13

                              Debtors.
-----------------------------------------------------------------
APPEARANCES:

O'Connor, O'Connor, Bresee & First, P.C.                        Michael Jude O'Connor, Esq.
*Attorneys for the Debtors*
20 Corporate Woods Boulevard
Albany, NY 12211

Miller & Dubuc, P.C.                                            John M. Dubuc, Esq.
*Attorneys for General Motors Acceptance Corp.*
14 Corporate Woods Boulevard
Albany, NY 12211

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Currently before the court is the objection by creditor General Motors Acceptance Corporation ("GMAC") to confirmation of the Chapter 13 plan filed by Jonathan and Jennifer Gonch ("Debtors"). At issue is the appropriate measure of the value of a motor vehicle for purposes of the § 1325(a)(5)(B)(ii) cramdown provision.[1] The court conducted a valuation hearing on August 17, 2009. Having heard sworn testimony and arguments of counsel and having considered the parties' pleadings and submissions in this proceeding, the court makes the following findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014(c).

---

[1] Unless otherwise noted, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532. "Cramdown" is a term used to describe the ability of a debtor to reduce an undersecured creditor's secured claim to the value of its collateral.

1

## JURISDICTION

The court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(K), 157(b)(2)(L), 157(b)(2)(O), and 1334(b).

## FACTS

On February 15, 2008, the Debtors filed a joint voluntary petition for relief under Chapter 13 of the Bankruptcy Code. GMAC filed a proof of claim for $26,041.00, partially secured by a lien on the Debtors' 2005 Chevrolet TrailBlazer (the "Vehicle"). The Debtors' plan proposes to pay GMAC $13,500.00 over thirty-eight months at 7 percent interest. The plan also proposes to pay 2 percent on all allowed unsecured claims. GMAC objected to confirmation of the plan on the basis that the Debtors had undervalued the secured portion of its claim, which GMAC indicated to be "at least $19,471.00, the approximate replacement value" of the Vehicle. (No. 15.)[2] The Debtors filed a response to the objection, attaching as support retail and trade-in values for the Vehicle, as well as a Carfax report showing that the Vehicle had been involved in an accident. The court scheduled a valuation hearing to determine the value of GMAC's collateral. The Scheduling Order required, among other things, that the parties file and serve trial exhibits by August 7, 2009. (No. 42.) Thereafter, the Debtors proposed an amended plan reducing plan payments from $500.00 per month to $300.00 per month and waiving any missed payments through February 2009 due to financial hardship. (No. 45.) GMAC filed a Motion for Relief from Stay on the basis that the proposed modification appears to render the plan infeasible. (No. 48.) The Debtors filed an Objection. (No. 54.) The hearings on confirmation of the Debtors' Amended Plan and GMAC's lift stay motion were adjourned pending the outcome of the instant valuation hearing.

---

[2] GMAC's proof of claim lists the value of the collateral as $17,471.67. (Claim No. 5-1.)

The Debtors assert that the appropriate value of the Vehicle for purposes of cramdown is $12,650.00.[3] In support of this proposed valuation, the Debtors rely on a number of documents. Chief among these is the Kelley Blue Book "private party value" for the period of January through June 2008, which lists a suggested price of $12,650.00 for a car of the same age and model as the Vehicle. (Debtor's Mem. of Law (No. 89) App. A.)[4] In further support of their proposed valuation, the Debtors offer NADA Used Car Guide ("NADA") values dated March 16, 2009 and June 17, 2009; Kelly Blue Book trade-in, private party, and retail values dated July 13, 2009; as well as a Kelley Blue Book retail value dated May 13, 2008 and a Kelly Blue Book trade-in value dated May 19, 2008. (Debtors' Exs. C, G, D, E, F, I, J, H.) The Debtors also offer a printout of a search from AutoTrader.com performed on June 17, 2009. (Debtors' Ex. H.) The AutoTrader.com search identifies fourteen results for a 2005 Chevrolet TrailBlazer with mileage over 37,000, within twenty-five miles of Albany, New York.[5] The vehicles ranged in asking price from $16,995 to $11,906, with an average asking price of $14,017. Each of these AutoTrader.com listings was with an automobile retailer. Finally, the Debtors offered testimony in support of their proposed valuation.

Jennifer Gonch ("Gonch") testified as to the history and condition of the Vehicle. In November 2007, Gonch was driving on the New York State Thruway when she collided with a pickup truck and was rear-ended by another car. Photographs depict damage to the front and rear of the Vehicle. (Debtors' Ex. B.) As a result of the accident, the driver's side door was jammed shut and the Vehicle leaked oil. Several parts needed to be repaired or replaced including the radiator, air conditioning, quarter panels, hood and grille, doors, bumpers, and

---

[3] The Amended Plan did not alter the proposed $13,500 payout, however this issue was not raised by GMAC at trial.

[4] The parties agreed to the post-trial submission of this Kelley Blue Book private party value, to which GMAC now objects. See discussion *infra* Part I.

[5] The results contain listings for both the "LT" and "LS" TrailBlazer models. The Vehicle is an LS model.

3

headlight. Not all parts were replaced with parts from the original manufacturer; some were replaced with "quality replacement parts." Since the repairs, the Vehicle does not operate as it had prior to the accident. The windshield inexplicably cracked, allegedly from the frame having been bent and then straightened. One headlight fills with water. The Vehicle emits a "clinking" noise. It shakes when driven at speeds of about 60 miles per hour. The check engine light remains on. A mechanic used a process described as "tricking the system" for the Vehicle to pass New York State motor vehicle inspection. The Vehicle also underwent cosmetic repairs and repainting. A bump appears near the hood, where the repair shop was unable to return the body of the Vehicle to its original condition. In addition, the shop failed to apply the proper finishing coat to the paint, which led to paint chipping off the hood. In an unrelated incident prior to the petition date, a pool supply company spilled chlorine in the back of the Vehicle, staining the carpet.

GMAC asserts that the appropriate value of the Vehicle for purposes of cramdown is $16,287.50. In support of this proposed valuation, GMAC submits the expert report of Shaun Cassidy ("Cassidy"), an appraiser employed by Hudson Valley Auto Appraisers ("HVAA"). Cassidy was unable to appear at the valuation hearing. In his place, GMAC called a different HVAA appraiser, Salvatore Falco, Sr. ("Falco").

Falco did not personally inspect the Vehicle and could not testify as to its condition. Falco's testimony was limited to the contents of the report, information regarding valuation guides, and HVAA's approach to valuing vehicles. Falco also testified in general as to the effect of an accident on the value of a vehicle. Citing an insurance standard, Falco stated that once a vehicle has been repaired following an accident, that vehicle is made whole and is no less valuable than a vehicle with no accident history. On cross-examination, Falco gave vague and

4

evasive answers to questions posed by Debtors' counsel. When pressed, Falco conceded that a prior accident could affect the price a potential buyer would be willing to pay for a vehicle.

According to the expert report, Cassidy inspected the Vehicle at the Debtors' residence in Wynantskill, New York. Cassidy did not start the engine or otherwise evaluate the mechanical condition of the Vehicle. It is unclear whether he looked under the hood. Based on his limited inspection of the Vehicle, Cassidy reported that the Vehicle "appeared to be in clean condition with no prior damage." (Creditor's Ex. 1.) Cassidy appraised the Vehicle at $16,287.50, based on averaged retail values from two valuation manuals: the Red Book and NADA. Red Book lists a suggested "Retail Price" of $15,850.00 for a car of the same age and model as the Vehicle with 59,500 miles. The Red Book value uses a base price of $16,700.00, with upward adjustments for a power driver seat ($175.00) and a rear electric defogger ($25.00), and a downward adjustment for mileage (-$1,050.00). NADA lists a suggested "Clean Retail" price of $16,725.00 for a car of the same age and model as the Vehicle with 59,500 miles. The NADA value uses a base price of $16,850.00, with upward adjustments for a power seat ($225.00) and a towing/camper package ($200.00), and a downward adjustment for mileage (-$550.00).

## ARGUMENTS

The main disagreement between the parties is the appropriate starting point for determining the value of the Vehicle. The Debtors contend that the appropriate starting point is $12,650.00, based on the Kelley Blue Book private party value. GMAC maintains that the private party value of $12,650.00 is not an accurate retail price for purposes of § 506(a)(2). GMAC points to the plain language of § 506 and emphasizes that replacement value, in this context, means "'the price a *retail* merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.'" (GMAC's Post-Trial

5

Mem. of Law (No. 88) unnumbered p. 2 (quoting 11 U.S.C. § 506(a)(2)) (emphasis in brief).) Accordingly, GMAC proposes a value for the Vehicle of $16,287.50, based on the averaged Red Book and NADA retail values.

## DISCUSSION

Before delving into the appropriate measure of the value of the Vehicle, the court addresses a threshold evidentiary issue. GMAC objects to the admission of the Kelley Blue Book private party value on three grounds: first, it constitutes hearsay and was not properly authenticated; second, the Debtors have not demonstrated that the document was not available prior to trial, thus denying GMAC its right to cross-examination; and third, it is not relevant. Of these objections, only the first was raised in GMAC's pretrial statement.[6] GMAC raised the remaining objections for the first time in its post-trial reply memorandum of law. GMAC agreed to the admission of the Debtors' exhibits at trial, including a Kelley Blue Book private party value (Debtors' Ex. E). GMAC also agreed to the post-trial submission of the Kelley Blue Book private party value at issue here. (Trial Tr. 4:15-20, 56:10-57:4, Aug. 17, 2009.) Although GMAC thereby arguably waived its objections, the court will address each in turn.

### I.    Admissibility of the Kelley Blue Book Private Party Value

GMAC's objections on the grounds of hearsay and authenticity are overruled. Federal Rule of Evidence 803(17) provides an exception to the hearsay rule for "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations." Fed. R. Evid. 803; Fed. R. Bankr. P. 9017. "The basis of trustworthiness is general reliance by the public or by a particular segment of it, and the motivation of the compiler to foster reliance by being accurate." Fed. R. Evid. 803

---

[6] *See* Creditor's Pretrial Statement (No. 71) ¶ 5 ("The exhibits attached to the debtors' pretrial statement amount to admissible [sic] heresy [sic] absent the testimony of an expert in the valuation of automobiles.").

advisory committee's notes. The public relies on Kelley Blue Book values to make informed car purchase decisions. The publishers of the Kelley Blue Book "know that their work will be consulted; if it is inaccurate, the public or the trade will cease consulting their product." *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 575 n.53 (D. Md. 2007) (citation omitted). The court concludes that the Kelley Blue Book private party value falls squarely within the hearsay exception for commercial publications. *See Sovereign Bank, F.S.B. v. Finnegan (In re Finnegan)*, 358 B.R. 644, 649 (Bankr. M.D. Pa. 2006) (collecting cases). Nothing before the court suggests that the document is not authentic. *See* Fed. R. Evid. 901(b)(4) (appearance, contents, substance, and distinctive characteristics of a document, taken in conjunction with circumstances, will authenticate it). In this case, the document bears the Kelley Blue Book logo and appears to be an exact photocopy of the guide book. The only alterations are two handwritten asterisks and a circle, indicating the location of the private party value of the Vehicle on the page. These facts, namely, that the pages were photocopied directly from the guide book, persuade the court of the document's authenticity. Therefore, the court declines to exclude the Kelley Blue Book private party value on these grounds.

GMAC's objection on the ground of untimely disclosure is overruled. The Scheduling Order directed the parties to file and serve trial exhibits by August 7, 2009. Counsel for GMAC, however, agreed to the post-trial submission of the Kelley Blue Book private party value. Based on this representation, the court allowed the submission, as it has the power to do. GMAC is thus equitably estopped from asserting a timeliness objection. *See, e.g., Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037–38 (2d Cir. 1993); *Konstantinidis v. Chen*, 626 F.2d 933, 937–38 (D.C. Cir. 1980). GMAC was not prejudiced. Any objection to the admission of the document could have been raised at the valuation hearing. Instead, GMAC consented to its post-trial

7

submission. Therefore, the court declines to exclude the Kelley Blue Book private party value on this ground.

GMAC's objection on the ground of relevance is overruled. Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 provides that all relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, or by applicable rule. Fed. R. Evid. 402. GMAC argues that the Kelley Blue Book private party value should be excluded because it does "not specifically reference the purported value as of February 2008." (Reply to Debtors' Mem. of Law (No. 90) ¶ 2.) The document at issue here is an excerpt from Vol. 16, No. 1 of the Kelley Blue Book Used Car Guide, which covers the period of January through June 2008. This period includes the petition date of February 15, 2008 and is thus relevant. Therefore, the court declines to exclude the Kelley Blue Book private party value on this ground. Having determined that the Kelley Blue Book private party value is admissible, the court turns to the substantive issue at hand.

## II.    Valuation Standard

Section 1325(a)(5) sets forth the conditions for confirmation of a Chapter 13 plan "with respect to each allowed secured claim provided by the plan." 11 U.S.C. § 1325(a)(5). Pursuant to § 1325(a)(5), "a debtor seeking confirmation of a plan has three options regarding a creditor's allowed secured claim: (1) obtain the creditor's acceptance of the plan; (2) keep the collateral securing the claim and make payments equaling the present value of the claim; or (3) surrender the collateral securing the claim to the creditor." *DaimlerChrysler Fin. Servs. Ams. v. Ballard (In re Ballard)*, 526 F.3d 634, 637 (10th Cir. 2008) (citing 11 U.S.C. §§ 1325(a)(5)(A)-(C)); *Till*

*v. SCS Credit Corp.*, 541 U.S. 465, 468 (2004). The Debtors did not purchase the Vehicle within 910 days of filing. As a result, GMAC is not protected by the so-called "hanging paragraph" from having its claim bifurcated and crammed down. *See, e.g., In re Lockenwitz*, Ch. 13 Case No. 09-10175, 2010 WL 1688723, at *2 (Bankr. N.D.N.Y. Apr. 27, 2010). The parties agree to the petition date as the date of valuation. (Trial Tr. 6:12-7:3.) GMAC does not object to the proposed interest rate. The narrow issue is the value of the Vehicle.

By retaining the Vehicle, the Debtors must prove that the amount GMAC will receive, as of the effective date of the plan, is not less than the allowed amount of its secured claim. *See* 11 U.S.C. § 1325(a)(5)(B)(ii). "Section 506(a) governs the allowed amount of the secured claim generally and 506(a)(2), added as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, specifically governs valuation for chapter 7 and 13 cases." *In re Martinez*, 409 B.R. 35, 39 (Bankr. S.D.N.Y. 2009). Section 506(a)(2), which codified the Supreme Court's decision in *Associates Commercial Corporation v. Rash*, 520 U.S. 953 (1997), requires that the collateral's value be determined by its replacement value. Pursuant to § 506(a)(2), the "replacement value" of property acquired for personal, family, or household purposes, means "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(a)(2).

A survey of case law reveals various approaches to valuing vehicles under § 506(a)(2). *See, e.g., In re Cook*, 415 B.R. 529, 535 (Bankr. D. Kan. 2009) ("NADA Clean Retail . . . is in most cases the best starting point for valuing personal use vehicles under § 506(a)(2)"); *In re Mayland*, Ch. 7 Case No. 06-10283, 2006 WL 1476927, at *3 (Bankr. M.D.N.C. May 26, 2006) (calculating retail value of car as 90 percent of NADA retail value, less cost of necessary repairs); *In re Ortiz*, Ch. 7 Case No. 06-16243, 2007 WL 1176019, at *3 (Bankr. S.D. Fla. Feb.

9

27, 2007) (calculating value of car by deducting from the retail value the hypothetical cost of repairs required to bring the car up to retail standards); *In re Martinez*, 409 B.R. 35, 40 (Bankr. S.D.N.Y. 2009) (quoting *Rash*, 520 U.S. at 960) ("The Kelley Blue Book Private Party Value is what a buyer can expect to pay when buying a used car from a private party, a good match with the replacement-value standard promulgated by the *Rash* Court: the 'price a willing buyer in the debtor's trade, business or situation would pay to obtain like property from a willing seller.'"). At least three districts have addressed the issue by creating local rules. *See, e.g.*, Bankr. D. Vt. R. 3012-1(b);[7] Bankr. N.D. W. Va. R. 3012-1(a) & App. N;[8] Bankr. E.D. Mo. R. 3015-2(G).[9]

This court has not adopted a specific procedure for valuing vehicles under § 506. The valuation of assets is not an exact science, and is done on a case-by-case basis. *Karakas v. Bank of New York (In re Karakas)*, Ch. 13 Case No. 06-32961, Adv. No. 06-80245, 2007 WL 1307906, at *5 (Bankr. N.D.N.Y. May 3, 2007) (quoting *In re Stanton*, Ch. 13 Case No. 03-66649, slip op. at 10 (Bankr. N.D.N.Y. Mar. 18, 2005)). Moreover, the guidance provided by *Rash* "precludes the expedient use of uniform starting points, benchmarks, polestars, shortcuts,

---

[7] D. Vt. Local Bankruptcy Rule 3012-1 states in part:

> **(b) Rebuttable Presumption of Valuation of Motor Vehicles.** As a starting point, the valuation of motor vehicle collateral shall be presumed to be the midpoint between the National Automobile Dealers Association ("NADA") wholesale value and the NADA retail value unless: (1) the parties agree to a different value; (2) the debtor or secured creditor presents an appraisal undisputed by the other party; or (3) the value is fixed by the Court as a result of an evidentiary hearing held specifically to determine the value of the particular vehicle

Bankr. D. Vt. R. 3012-1(b).

[8] N.D. W. Va. Local Bankruptcy Rule 3012-1 states in part: "Absent a showing of extraordinary circumstances to the contrary, the Court accepts as authoritative and dispositive ... [t]he most recent NADA Blue Book or Kelly Blue Book average of the loan and retail values." Bankr. N.D. W. Va. R. 3012-1(a) & App. N.

[9] E.D. Mo. Local Bankruptcy Rule 3015-2(G) references a vehicle valuation policy, which states: "**Vehicle Valuation.** Absent evidence to the contrary, for purposes of 11 U.S.C. § 506, the Court's Vehicle Valuation Policy referred to in L.R. 3015-2(G) shall be 97% of the National Automobile Dealers Association (NADA) (Central Edition) retail value at the time of filing the petition." Bankr. E.D. Mo. R. 3015-2(G); Procedures Manual Accompanying Local Rules of Bankruptcy Procedure 13 (2009), *available at* http://www.moeb.uscourts.gov/pdfs/local_rules/Procedures Manual.pdf.

10

and rules of thumb." *See In re Gonzalez*, 295 B.R. 584, 590–91 (Bankr. N.D. Ill. 2003) (citations omitted); *see also Winston v. Chrysler Fin. Corp. (In re Winston)*, 236 B.R. 167, 171 (Bankr. E.D. Pa. 1999) ("establishment of a set formula for vehicle valuation in a cramdown bifurcation based upon 'book' value is neither necessary nor . . . consistent with § 506(a);" court "must be prepared to value vehicles on a case-by-case basis, depending on the evidence presented," and while "the parties may stipulate and witnesses may incorporate 'book' values into their testimony, it is testimony based on the books' figures that control, not the books' figures in and of themselves"). The court turns to the evidence offered by the parties to establish the value of the Vehicle.

GMAC called Falco who testified, based on book values in Cassidy's report, that the Vehicle should be valued at $16,287.50. Falco never saw the Vehicle. Cassidy's underlying inspection was cursory at best. GMAC's valuation is based on the $16,725 NADA "Clean Retail" value and the $15,850 Red Book "Retail Price." While the court has no information as to how Red Book defines its "Retail Price," NADA defines its "Clean Retail" value as follows:

> No mechanical defects and passes all necessary inspections with ease; Paint, body and wheels have minor surface scratching with a high gloss finish and shine; Interior reflects minimal soiling and wear, with all equipment in complete working order; Vehicle has a clean title history; Vehicle will need minimal reconditioning to be made ready for resale.

(Debtors' Ex. G.) The NADA "Clean Retail" value, upon which GMAC's experts rely, is inappropriate in this case given the actual condition of the Vehicle. The Vehicle has mechanical defects. It shakes when driven at speeds of around 60 miles per hour and emits a clinking noise. To pass inspection without "tricking the system," the Vehicle requires repairs. The paint and body have more than minor surface scratching. The body is deformed; paint chips off the hood. The interior reflects significant soiling, in the form of a bleach-stained carpet. While the Vehicle

has a clean title history, it needs reconditioning to meet the retail standard. Based on the above, the expert report bears little relation to the vehicle in question here. In addition, GMAC's expert Falco, whose testimony relied on the deficient report, was himself not credible as an expert in this case. Falco opined that a prior accident would have no effect on the value of the Vehicle, only later to recant his opinion. Falco never viewed, let alone inspected, the Vehicle. Therefore, the court rejects the valuation offered by GMAC.

The Debtors primarily rely on the Kelley Blue Book private party value. Kelley Blue Book defines its private party value as follows:

> **Private Party Value** is what a buyer can expect to pay when buying a used car from a private party. The Private Party Value assumes the vehicle is sold "As Is" and carries no warranty (other than the continuing factory warranty). The final sale price will vary depending on the vehicle's actual condition and local market conditions. This value may also be used to derive Fair Market Value for insurance and vehicle donation purposes.

(Debtors' Ex. E; Debtors' Mem. of Law App. A.) GMAC argues that a plain reading of § 506 mandates the use of "retail" book values. In *In re De Anda-Ramirez*, the Bankruptcy Appellate Panel for the Tenth Circuit rejected the application of the Kelley Blue Book "retail value" as the appropriate measure of value under the circumstances. *Midwest Regional Credit Union v. De Anda-Ramirez (In re De Anda-Ramirez)*, 359 B.R. 794, 797–98 (10th Cir. BAP 2007). In doing so, the Court noted:

> Other than both containing the word "retail," the Code and KBB definitions have little in common. The Bankruptcy Code's definition of "retail" includes an adjustment for the age and condition of the vehicle; KBB defines "retail" as the price for a vehicle that is in "*excellent condition*" with the proviso that less than 5% of vehicles for sale qualify as "excellent." Clearly, these two are not equivalent and Midwest's reliance on the KBB retail value is misplaced.

*Id.* at 797 (emphasis added) (footnote omitted). GMAC's reliance on the NADA clean retail value is similarly misplaced. While GMAC's plain reading argument finds support in the case

law, *see In re Morales*, 387 B.R. 36, 46–47 (Bankr. C.D. Cal. 2008), "it appears that a consensus is developing that it is the condition of the car that determines whether what KBB and NADA designate as 'retail value' or 'private party value' or some other value be used and that the critical starting point is 'the age and condition' of the vehicle." *In re Berry*, Ch. 13 Case No. 08-10264, 2008 WL 2064777, at *4 (Bankr. D. Vt. May 13, 2008). GMAC objects to the Kelley Blue Book private party value, but offered no credible testimony or other evidence to controvert this value, which remains the only credible evidence in the record. The court concludes, based upon the condition of the Vehicle in this case, that the $12,650.00 Kelley Blue Book private party value is a viable starting point for valuation.[10] *See In re Martinez*, 409 B.R. 35, 40 (Bankr. S.D.N.Y. 2009).

Finally, the court must determine the reasonable adjustment to the Kelley Blue Book private party value in light of the Vehicle's age and condition as of the petition date. On the one hand, the $12,650.00 value offered by the Debtors does not reflect upward adjustment for upgrades to the Vehicle. On the other, it does not reflect a downward adjustment for mileage. The record supports an upward adjustment of $550 for an electric defogger, luggage rack, towing package, theft recovery system, and power seat. (*See* Debtors' Exs. K, C; Creditor's Ex. 1.) The record also supports a downward adjustment of $550 for mileage. (Creditor's Ex. 1.) Accordingly, the downward adjustment offsets the upward adjustment. In support of a further downward adjustment, the Debtors point to the need for a replacement air filter and a new carpet.

---

[10] The court's reliance on the private party value is based upon the only competent evidence in the record and applies only to the facts as they exist in this case. This ruling has no precedential effect on the question of the appropriate starting point for valuation. Although the NADA Clean Retail was not appropriate in this case, that does not mean it is never appropriate. "Like the Tenth Circuit BAP, this court finds that the salient language in § 506(a)(2) is the qualifier 'considering the age and condition of the property.'" *In re Berry*, 2008 WL 2064777, at *3 (citing *In re De Anda-Ramirez*, 359 B.R. at 797 & n.3). Depending on the condition the vehicle, NADA Clean Retail may well be the appropriate starting point for valuation, and the closest match for "the price a retail merchant would charge" under § 506(a)(2).

13

The Debtors, however, offer no competent evidence to quantify these downward adjustments.

Therefore, the court finds that the replacement value of the Vehicle is $12,650.00.

## CONCLUSION

Based upon the foregoing, it is hereby

ORDERED, that GMAC's Objection to Confirmation of the Debtors' Chapter 13 plan is overruled. The replacement value of the 2005 Chevrolet TrailBlazer is hereby fixed at $12,650.00; and it is further

ORDERED, that the Debtors shall file a Fourth Amended Chapter 13 plan in accordance with this Order no later than August 20, 2010; and it is further

ORDERED, that the Debtors' confirmation hearing and GMAC's Motion for Relief from Stay (No. 48) shall be restored to the court's August 26, 2010 motion calendar at 1:00 p.m.

Dated: August 9, 2010
/s/ Robert E.Littlefield, Jr.
Hon. Robert E. Littlefield, Jr.
Chief United States Bankruptcy Judge